**Theron M. Hall, III**
**The Hall Law Firm, P.C.**
50 West Vaughn, Ave. Ste. 204
Gilbert, Arizona 85234
Phone (602) 222-6699
lawyer@theronhall.com
Arizona Bar No. 019114
**Attorney for Defendant**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

United States of America,

Plaintiff,

v.

Keymal Rucker,

Defendant,

Case No. 21-cr-08082-SMB-PHX

**DEFENDANT'S OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT**

Defendant Keymal Rucker makes the following objections to the Presentence Investigation Report.

Respectfully submitted this 6th day of May, 2023.

*s/ Theron M. Hall, III*
Theron M. Hall, III

## OBJECTIONS

**Paragraph 8**: Mr. Rucker only requested that Ms. Conlin purchase a single firearm for him, a Century Arms Mini Draco pistol with a magazine on

March 8, 2020. Ms. Conlin was already purchasing firearms long before she purchased the single firearm for Mr. Rucker on March 8, 2020. Ms. Conlin did not purchase other firearms for Mr. Rucker.

**Paragraph 9**: Mr. Rucker only accompanied Ms. Conlin to Mr. Pawn located in Bullhead City once to purchase the single firearm that Ms. Conlin purchase for him. The other occasions that Mr. Rucker went to Mr. Pawn involved transactions for a play station game, jewelry and other non-firearm items. All such transactions should be on the official records kept by personnel at Mr. Pawn. Furthermore, there are no store records, photographs, surveillance videos, GPS evidence, etc. to corroborate allegations that Mr. Rucker was involved in the purchase of any other firearm at Mr. Pawn, or any other firearms dealer. Mr. Rucker never spoke with employees at Mr. Pawn about firearms. Ms. Conlin did not purchase an AK-47 variant rifle for Mr. Rucker on March 10, 2020. Nor was Mr. Rucker involved with any attempted firearm purchase on March 15, 2020.

**Paragraph 10:** Mr. Rucker did not accompany Ms. Conlin to purchase any other firearm, other than the singe firearm purchased on March 8, 2020. Mr Rucker did not provide Ms. Conlin with money for the purchase of other firearms, he never told Ms. Conlin which firearms to purchase and he never removed firearms from Ms. Conlin's residence. Likewise, Ms. Conlin never delivered any other firearms to Mr. Rucker. Ms. Conlin informed agents that she first starting purchasing firearms with Mr. Rucker in October 2019. *See* PSR at Paragraph 10. However, as noted in Paragraph 6 of the PSR, Ms. Conlin was already purchasing firearms as of May 25, 2019 at Mr. Pawn and

M & M Sales, LLC. Ms. Conlin already owned firearms and was already purchasing firearms long before she met Mr. Rucker.

Mr. Rucker was introduced to Ms. Conlin, when he was looking to purchase a firearm and an acquaintance advised him that Ms. Conlin was in the business of selling firearms. Again, there was no personal relationship between Ms. Conlin and Mr. Rucker, nor any relationship involving the traffic of firearms.

Mr. Rucker never used the alias Christian Kashus Milz, never stayed at Ms. Conlin's residence, and never had a personal or gun trafficking relationship with Ms. Conlin. When Mr. Rucker spoke with agents on May 27, 2020, he was under the influence of drugs and thought if said otherwise, he could avoid getting into trouble for purchasing the Mini Draco pistol. He regrets that he was not upfront at that time.

**Paragraph 11:** The cash that was found in the vehicle driven by Mr. Rucker's fiancé, came from a stimulus payment and tax return that were mailed to his fiancé and payment for two songs that Mr. Rucker had written for a recording musician. Mr. Rucker did not have a bank account and kept all of his money in cash. The money was not proceeds for the sale of firearms or drugs.

**Paragraph 12**: The morphine pills were prescribed to his daughter, who's serious medical conditions are described in the Defendant's Sentencing Memorandum. Drugs were not in the vicinity of children's food items. The container was stored in Mr. Rucker's bedroom and was likely moved during the search.

The alleged bags of marijuana were actually marijuana trimmings, i.e. stems and leaves, as can be seen in Exhibit 1. Trimmings are used for making lotions and rubs for muscle aches and to be used in baking goods. The trimmings are boiled down and the water solution is used for the lotion/rubs/baking goods, whereas the fibrous remains are discarded. It should be noted that marijuana is legal in Nevada. The jar of marijuana that was found in a backpack in the vehicle, was not found in the kitchen. The marijuana was purchased legally at a dispensary. Mr. Rucker has never been involved in the sale of drugs.

The Mini Draco pistol that was located in the residence was the single firearm that Ms. Conlin had purchased for Mr. Rucker. The Tannerite jars were targets that are legal and are legally sold at stores. They are not illegal explosives to be used in bombs; rather, they are simply targets for firearms.

**Paragraph 13:** Again, Mr. Rucker was impaired by drugs when he told agents that he dated Ms. Conlin and stayed at her residence—thinking it would help him avoid responsibility for the single firearm (i.e. Mini Draco pistol) purchased by Ms. Conlin. Mr. Rucker never stated that he was involved in the trafficking of firearms and that he traveled to California to sell firearms; rather, he traveled to California to visit family and obtain medical treatment for his daughter.

**Paragraphs 14 and 15:** Mr. Rucker never possessed a machine gun, and does not have experience modifying firearms into machine guns. Again, he was under the influence of drugs when he spoke to agents on May 27, 2020. Mr. Rucker made it clear that the firearms found in his residence on August 3, 2021 were not purchased by Ms. Conlin.

**Paragraph 16:** Mr. Rucker never instructed Ms. Conlin to purchase firearms. He did ask her to purchase a single firearm as noted above, a Mini Draco pistol. Again, Mr. Rucker was not involved with Ms. Conlin's purchase of other firearms.

**Paragraph 18:** Mr. Rucker had no role in the firearms purchased by Ms. Conlin that were later found in California.

**Paragraph 25**: Mr. Rucker objects to the 8-level enhancement under Guidelines § 2K2.1(b)(1)(D).

It is common knowledge that gun vendors have surveillance systems; yet, there is no surveillance video or photos to substantiate allegations that Mr. Rucker went to any vendor to purchase firearms or gave money/instructions to Ms. Conlin. There is no documentary evidence to suggest that Rucker was involved in the purchase of other firearms. There are no corroborating e-mails, text messages, recorded messages, recorded phone calls, etc., to substantiate Ms. Conlin's claim that Mr. Rucker was involved with her purchase of other firearms. Mere allegations by Ms. Conlin is not sufficient. Statements by store employees without surveillance videos, photographs or other documentation is not sufficient. Thus, there is not sufficient proof of the purchase of any other firearm by Mr. Rucker, other than the single Mini Draco pistol on March 8, 2020. Furthermore, Mr. Rucker never admitted to any firearm purchase with Ms. Conlin, other than the single Mini Draco Pistol detailed in Count 26 of the Indictment.

It is interesting that Ms. Conlin is claiming that Mr. Rucker used an alias and a different cell number, specifically 928-219-1123. Ms. Conlin stated that she purchased the 928-219-1123 phone on her company account.

If that is the case, why hasn't the government produced any phone records which could easily be obtained through Ms. Conlin's cell phone service. Such records would include GPS data that would also show where the telephone was located, especially if Mr. Rucker had the cell phone at his known place of residence in Nevada or at any gun vendor. Mr. Rucker had a cell phone confiscated by agents when he was arrest on May 27, 2020 and then again on August 3, 2002. Agents could have easily obtained GPS data from the cell phones to show whether or not Mr. Rucker had actually been to any gun venders and/or to Ms Conlin's residence. Additionally, a comparison of GPS data from Ms. Conlin's cell phone and Mr. Rucker's cell phone would help prove that they were never together at a gun vendor nor at Ms. Conlin's residence at the same time. Again, there is no GPS data to suggest that Mr. Rucker went with Ms. Conlin to purchase firearms.

Mr. Rucker should only be held accountable for the single firearm that Ms. Conlin purchased for Mr. Rucker. With only one firearm, there should be no enhancement under Guidelines § 2K2(b)(1). Only four firearms were found in Mr. Rucker's possession: a) two on May 27, 2020, when law enforcement found a 40 caliber handgun and the Mini Draco pistol; and b) two on August 3, 2021, when law enforcement found a Glock pistol and a small caliber 22 rifle that looks like an AR-15 style rifle. Only one firearm was purchased by Ms. Conlin and Mr. Rucker using false statements. The other three arms were not purchased by Ms. Conlin and were not purchased using false statements. Again, there is insufficient evidence to hold Mr. Rucker responsible for the remaining firearms, purchased independently by Ms. Conlin. Mr. Rucker should only be found responsible for the single Mini

Draco pistol under Guidelines § 2K2(b)(1) purposes; and should not receive an eight-level enhancement.

Even if the court were to believe the allegations made by Ms. Conlin that Mr. Rucker was involved in the purchase of additional firearms with Ms. Conlin, there should not be an eight-level enhancement under Guidelines § 2K2(b)(1)(D); rather, then should only be a six-level enhancement under Guidelines § 2K2(b)(1)(C). As noted in Paragraph 10 of the PSR, Ms. Conlin stated that she and Mr. Rucker first purchased firearms together in October of 2019. Of the 102 firearms alleged in Paragraphs 18 and 25, 13 were independently purchased by Ms. Conlin before October of 2019, as noted in the table below.

| **Count** | **Number of Firearms** | **Date of Purchase** |
|---|---|---|
| 2 | 4 | 5/27/2019 |
| 3 | 1 | 6/16/2019 |
| 4 | 2 | 6/28/2019 |
| 5 | 1 | 7/2/2019 |
| 6 | 1 | 7/22/2019 |
| 7 | 1 | 9/25/2019 |
| 37 | 1 | 5/25/2019 |
| 38 | 2 | 6/2/2019 |
| | | |
| | Total Number of Firearms purchased by Ms. Conlin before October of 2019: **13 firearms** | |

Again, Ms. Conlin clearly stated that Mr. Rucker and she first purchased firearms together in October of 2019. Consequently, the 13 firearms independently purchased by Ms. Conlin before she allegedly ever purchased a firearm with Mr. Rucker should not be counted in the number of firearms for an enhancement under Guidelines § 2K2(b)(1). Subtracting 13 firearms from 102 firearms results in a total of 89 firearms and just a six-level enhancement under Guidelines § 2K2(b)(1)(C), as opposed to an eight-level enhancement under Guidelines § 2K2(b)(1)(D). However, as detailed above, Mr. Rucker was only involved with Ms. Conlin for the purchase of a single firearm using false statements, and should therefore not receive any enhancement under Guidelines § 2K2(b)(1).

**Paragraph 36:** Although sentenced to two years of incarceration, Mr. Rucker only served one year.

**Paragraphs 43-47:** Mr. Rucker disputes the allegations that he was involved with robberies referenced in paragraphs 43 to 47. No charges were filed and there were no convictions.

**Paragraph 50**: Mr. Rucker does not believe that his step-siblings were jealous; rather, they felt abandoned since Mr. Rucker was not raised with them. They have always enjoyed have Mr. Rucker around and greatly missed him when he was not there.

**Paragraph 56**: Mr. Rucker again reiterates that he never had a relationship with Ms. Conlin; which is corroborated by Mr. Rucker's fiancé.

**Paragraph 58:** Mr. Rucker also sustained a brain injury and continues to suffer with serious migraines and sometimes blurry sight. Mr.

Rucker has been informed that the injury may have detrimentally affected his cognitive abilities.

**Paragraph 68**: Mr. Rucker actually owes around $13,000, as opposed to $63,000 in back child support. Despite being with his fiancé and children, California law requires one parent pay child support before the other parent can receive government assistance and insurance.

Respectfully submitted this 6th day of May, 2023.

*s/ Theron M. Hall, III*
Theron M. Hall, III

**MAIL CERTIFICATE**

**I HEREBY CERTIFY THAT ON THE 6TH DAY OF MAY, 2023, I ELECTRONICALLY TRANSMITTED THE ATTACHED DOCUMENT TO THE CLERK'S OFFICE USING THE CM/ECF SYSTEM. A COPY WAS ALSO E-MAILED TO THE HONORABLE SUSAN M. BRNOVICH AND ASSISTANT U.S. ATTORNEY COLEEN P. SCHOCH.**

*s/ Theron M. Hall, III*
Theron M. Hall, III